750

COX, trustee, *v.* LITTLE *et al.*

No. 9958. April 12, 1934.

*Tye, Thomson & Tye* and *R. A. Edmondson Jr.,* for plaintiff.

*J. L. Mayson, C. S. Winn,* and *J. C. Savage,* for defendants.

BECK, P. J. W. R. Cox as trustee applied for the writ of mandamus against J. C. Little and others, tax-assessors of the City of Atlanta. In his petition it is alleged that the charter of the city makes it the duty of the tax-assessors to assess the property in the city each year at its cash market value as of the first of February of the year; that petitioner has certain described property in the city, which he seeks to have assessed; that "said assessors made a so-called assessment against said property for the year 1933 of $20,000; that said assessment was not made solely on the basis of cash market value of said property, but said assessors in arriving at the pretended assessment, took into consideration the need of the City of Atlanta to raise a certain amount of revenue for the year, and they made the assessment of petitioner's lot with the need of Atlanta for revenue as a factor in fixing the amount of the assessment; that petitioner's lot has never been assessed for 1933 solely on the basis of its cash market value; that the pretended assessment entered against petitioner's property in the manner above set out is largely in excess of its real cash market value as of February 1, 1933, and of any assessment that would have been made by the assessors if they had taken into account no factor other than those bearing on cash market value and had acted solely on their judgment and opinion as to the cash market value of said property, uninfluenced by the needs of the City of Atlanta to raise revenue;" and that he has no remedy to obtain relief except by mandamus. The court sustained a general demurrer and dismissed the petition, and the plaintiff excepted.

Reading the entire petition and construing the allegations most strongly against the pleader, it appears that an assessment was made by the tax-assessors. Petitioner insists that no real assessment was made. In view of the allegations, it is apparent that an

assessment was made, and petitioner does not allege any facts to sustain his allegation in other parts of the petition that "the assessors, in arriving at the pretended assessment, took into consideration the need of the City of Atlanta to raise a certain amount of revenue for the year, and they made the assessment of petitioner's lot with the need of Atlanta as a factor in fixing the amount of the assessment," and "that petitioner's lot has never been assessed for 1933 solely on the basis of its cash market value." While petitioner says that the amount fixed was more than the cash market value, he nowhere states in the petition what its actual cash market value was. The expression "pretended assessment" is used several times in the petition, but no facts are alleged to show that this was a mere pretended assessment, and it stands on the books as an assessment. In making these assessments the tax-assessors necessarily exercise judgment and discretion. It is not purely a ministerial work that they do. In the present case it will be presumed, in the absence of facts alleged to show otherwise, that the officials in question performed their duty. They entered an assessment upon the books. They were not guilty of mere inaction. In *City of Atlanta* v. *Wright,* 119 *Ga.* 207 (45 S. E. 994), this court said: "Mandamus is, primarily and chiefly, a remedy for official inaction. In its inception it was 'a mere mandate issuing directly from the sovereign to the subject to compel the performance of the royal will; it was in no sense a judicial writ. In process of time, however, the arbitrary issue of this royal mandate fell into disuse and gave place to the judicial writ of mandamus by which the court of King's Bench at an early day assumed the right to correct and remedy official inaction.' 19 Am. & Eng. Enc. L. (2d ed.) 716, 717. Blackstone says: 'It issues to the judges of any inferior court, commanding them to do justice according to the powers of their office, whenever the same is delayed.' 2 Cooley's Bl. 110. It has been generally, if not universally, held, that the writ will not lie to control the discretion of an officer vested with judicial powers, or powers which, in their nature, call for the exercise of judgment in their performance. The writ 'may set him in motion,' but 'it will not further control or interfere with his action, nor will it direct him to act in any specific manner.' High's Ext. Leg. Rem. (3d ed.) § 34. 'To do so would be to substitute the judgment and discretion of the court issuing the mandamus for that of the court or

officer to whom it was committed by law.' 19 Am. & Eng. Enc. L. (2d ed.) 733-4. There is but one exception to the rule that the function of the writ is to set in motion, and not to control the discretion of the officer to whom it is directed, and that is where the discretion reposed in the officer has been grossly abused, or has been arbitrarily or capriciously exercised. In such a case mandamus will lie to compel the proper exercise of the powers granted. 19 Am. & Eng. Enc. L. (2d ed.) 737-9. This exception is more apparent than real, for such an exercise of power really amounts, in a legal sense, to no exercise, and the writ may still be said to only set the officer in motion. In Georgia the law as to the issuance of mandamus is contained in the Civil Code, §§ 4867-8 [1910, §§ 5440 et seq.] It is there provided that the writ may issue 'whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment' of official duties; that 'mandamus does not lie as a private remedy between individuals to enforce private rights, nor to a public officer who has an absolute discretion to act or not, unless there is a gross abuse of such discretion; but it is not confined to the enforcement of mere ministerial duties.' : . It will be observed that the petition does not complain of official inaction or inertia. On the contrary, the contention is that the comptroller-general has acted, but in the wrong manner, and that the course pursued by him has resulted injuriously to the petitioner. In other words, the ground relied on for the issuance of the writ of mandamus is that whatever discretion was vested in the comptroller-general has been exercised in an arbitrary and capricious manner, and that the court should step in and direct him to act as required by law."

In *Richmond County* v. *Steed,* 150 *Ga.* 229 (103 S. E. 253), it was said: "Where the act required to be done involves the exercise of some degree of official discretion and judgment on the part of the officer charged with its performance, the writ may properly command him to act, or, as is otherwise expressed, may set him in motion; it will not further control or interfere with his action, nor will it direct him to act in any specific manner. If the act which involves the exercise of official discretion and judgment under the law is performed under the compulsory process of the court, obviously the act is the act of the court, and not of the official required by law to exercise his discretion." In *Davis* v. *Arthur,* 139 *Ga.* 74

(76 S. E. 676), this court said: "There is always a prima facie presumption in favor of the good faith of the officer, and he who assails his official acts by employing the writ of mandamus must prefer specific charges. The authorities concur in stating the rule of pleading in mandamus cases to be that the allegations of the petition must be positive, and not on information and belief; that the facts must be pleaded with certainty. The ultimate facts upon which the right to the writ of mandamus is based should be alleged."

The applicant, under all the facts alleged, was not entitled to the writ of mandamus. The court did not err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur.*

GILBERT, J., concurring specially. In addition to what is said in the opinion of the Presiding Justice, there is another sufficient reason for affirming the judgment. The charter of the City of Atlanta (City Code of 1924, § 109) provides: "Any taxpayer, feeling aggrieved at the assessment of his or her real or personal property, may file a petition with the chairman of the tax committee, setting forth, under oath, all the property real and personal, owned by said taxpayer and subject to taxation by the city, at its true market value, as well as giving the assessment thereon by the tax-assessors. Said chairman shall submit this petition to the tax committee, who shall have a hearing thereon, after giving notice of the time and place of such hearing to the petitioner as well as to the tax-investigator or other persons which said committee desires to be present, and also to the tax-assessors. At said time and place the tax committee shall investigate all the facts relating to said taxpayer's return, and, after such investigation, shall order same reduced or raised or approved as said committee may find to be just, fair, and reasonable, and shall also report to the general council, at the following meeting, their findings upon such hearing. If their findings are approved by the general council, these findings shall thereupon be held final for the year for which such assessments were made. At such hearings the general council may provide, by ordinance, for the production of books, papers, etc., necessary for full investigation. Also to issue subpœna duces tecum to any taxpayer, requiring production of all his books, papers, policies, etc., in order that the true values may be ascertained." This affords a remedy which the taxpayer must pursue before resorting to the extraordi-

754

nary remedy of mandamus. Civil Code (1910), § 5440. Mandamus is a remedy which can be obtained when there is no other adequate and specific remedy at law. It is available only when it is exclusive. *Mattox* v. *Board of Education of Liberty County,* 148 *Ga.* 577, 581 (97 S. E. 532, 5 A. L. R. 568).